BARRY WASHINGTON (propria persona)
Email: *justicedelayed.is.justicedenied@outlook.com*
PO Box 1572
Portland, OR 97207
(971) 266-1857

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| BARRY WASHINGTON,<br><br>      Plaintiff,<br><br>v.<br><br>CITY OF PORTLAND et al.,<br><br>      Defendants. | Case No. 3:26-cv-00236-SI<br><br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**<br>(42 U.S.C. § 1983 — FOURTH AND FOURTEENTH AMENDMENTS; MUNICIPAL LIABILITY)<br><br>    **JURY TRIAL DEMANDED** |

## I.      INTRODUCION

1.      Plaintiff, BARRY WASHINGTON, brings this action under 42 U.S.C. § 1983 for damages, declaratory relief, and injunctive relief arising from a January 26, 2021 Portland Police Bureau stop that officers expanded beyond any legitimate basis, turning a minor vehicle encounter into a warrantless search, arrest, prosecution, and loss of shelter, and from the City's continued maintenance and operational use of firearm-coded caution information after the prosecution ended without conviction.

2.      This case is led first by a Monell theory of racially inflected stop escalation. Plaintiff alleges that the City maintained or tolerated practices under which PPB officers used pretext, scope expansion, and slanted reporting to escalate encounters involving

Black motorists and other racial minorities, and that in Plaintiff's encounters the same practice also operated against a houseless person living in a home.

3.	In the same encounter, Doe Officers caused the vehicle to be towed and impounded even though it functioned as Plaintiff's home. The impoundment deprived Plaintiff of shelter and transportation and materially impaired his access to employment, housing stability, and daily necessities.

4.	The City purportedly had safeguards meant to prevent this kind of policing. PPB directives governed bias-based policing, search justification, and documentation, and impound discretion for vehicles used as homes. Plaintiff alleges that the City failed to train, supervise, and enforce those safeguards and instead maintained or tolerated practices under which PPB officers escalated minor stops through pretext, expanded the scope of stops involving Black motorists and other racial minorities, searched vehicles without adequate constitutional basis, treated the vehicle-home context as irrelevant to tow decisions, and generated slanted possession narratives that converted weak facts into criminal process.

5.	After the criminal case was dismissed in the interest of justice and ended without conviction, officer-facing law-enforcement records continued to reflect firearm-coded caution language associated with Plaintiff. Plaintiff alleges that the City maintained, adopted, retained, republished, displayed, and/or operationally relied on that caution information without constitutionally adequate notice, auditing, correcting, or name-clearing procedures, causing later high-risk encounters and continuing injury.

## II.	JURISDICTION AND VENUE

6.	This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff brings claims under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

7. Venue is proper in this District under 28 U.S.C. § 1391 because the events and omissions giving rise to these claims occurred in Oregon and the City resides in this District.

8. The prosecution described in this First Amended Complaint terminated without conviction on November 30, 2023. The two-year anniversary fell on Sunday, November 30, 2025. Plaintiff submitted the original complaint for filing through the Oregon Judicial Department eFiling system on Monday, December 1, 2025, the next business day.

9. To the extent a later acceptance date or file-stamp appears in the state-court register, Plaintiff alleges that any discrepancy resulted from clerk-directed processing, eFiling correction steps, and fee-waiver mechanics rather than from a failure to submit the complaint by December 1, 2025. This action was later accepted in Multnomah County Circuit Court as Case No. 25CV63881 and then removed to this Court.

## III. PARTIES

10. Plaintiff Barry Washington is an adult Black male resident of Oregon.

11. Defendant City of Portland is a municipal corporation organized under Oregon law and is responsible for the Portland Police Bureau, the Bureau of Emergency Communications, and the policies, training, supervision, discipline, record systems, operational directives, and practices relevant to this action.

12. The Portland Police Bureau, or PPB, is a bureau of the City. PPB officers exercise police powers delegated by the City and the State, including authority to stop, detain, search, seize, arrest, tow and impound vehicles, prepare reports and charging referrals, and create or maintain officer-safety and caution information used in later encounters.

13. The Bureau of Emergency Communications, or BOEC, is a City bureau responsible for 9-1-1 call-taking and dispatch operations, including officer-facing dispatch and caution information relevant to Plaintiff's post-dismissal theory.

14. Doe officers 1-5 are PPB officers whose true names are presently unknown to Plaintiff. They are sued in their individual capacities. Plaintiff will amend this Complaint to identify them after discovery.

15. At all relevant times, each Doe Officer acted under color of state law and within the course and scope of employment with the City.

16. The criminal case was prosecuted by a prosecuting authority in Multnomah County. Plaintiff does not assert claims against any prosecutor in this action.

## IV. CITY / BUREAU STRUCTURE, FINAL POICYMAKERS, AND PUBLICLY STATED SAFEGARDS

17. PPB is a bureau of the City of Portland. On information and belief, the City's final policymakers for the matters alleged here include the Chief of Police and other City officials with final authority over PPB directives, training, supervision, discipline, towing and impound practices, and officer-safety and records-management practices.

18. Through written directives and policies, PPB purports that officer conduct during stops, searches, seizures, inventories, towing and impoundments, reporting, and officer-safety recordkeeping is governed by constitutional limitations and procedural safeguards.

19. Directive 0650.00, concerning searches, seizures, and inventories, addresses vehicle-stop searches, consent procedures, and documentation. PPB purports that investigative consent searches during pedestrian or vehicle stops require constitutionally adequate justification, that officers must advise of the right to refuse or revoke consent, and that the consent-search procedure and justification must be documented.

20. Directive 0630.60, concerning vehicle disposition and impoundment, addresses officer discretion, hardship, and vehicles used as homes. PPB purports that members should exercise discretion when impoundment may create undue hardship or risk, including circumstances involving vehicles used as homes.

21. Directive 0344.05 prohibits bias-based policing and profiling, including policing based on race and housing status. PPB purports that members may not take

police action motivated by bias and may not use race, housing status, or comparable protected characteristics as substitutes for objective facts.

22.     PPB and City code provisions also address inventories of impounded vehicles, towing documentation, reporting accuracy, and officer-safety recordkeeping. These safeguards recognize the known constitutional risks associated with vehicle searches, impoundments, officer-safety labeling, and biased or status-based policing.

23.     These explicitly stated safeguards put the City on notice that deficient training, supervision, or enforcement in these policy areas predictably risks racially selective or racially inflected stop extension, unlawful searches, improper impoundment of vehicle-homes, inaccurate reporting, and continued harm from erroneous or misleading caution information.

## V.     FACTUAL ALLEGATIONS

### A.     January 26, 2021 Stop, Detention, Removal from Vehicle, and Search

24.     On January 26, 2021, Plaintiff was driving in Portland near Stark Street and the I-205 area when PPB officers initiated a stop.

25.     At that time, Plaintiff was houseless and living in the vehicle.

26.     Plaintiff informed officers, and officers could also observe from the contents and condition of the vehicle, that the vehicle was Plaintiff's only shelter.

27.     Multiple PPB officers engaged in the stop.

28.     Doe Officers ordered Plaintiff and the passenger out of the vehicle before conducting any search and controlled Plaintiff's movements while doing so.

29.     Plaintiff did not give valid consent for the vehicle search. Doe Officers had no warrant.

30.     No firearm was observed in plain view before the search.

31.     Doe Officers asserted that a firearm was found only after Plaintiff and the passenger were removed from the vehicle and the search had been conducted.

32.     The firearm was allegedly located on or near the passenger-side floor area.

33.     The passenger was not arrested.

34.     Doe Officers attributed the firearm to Plaintiff.

**B.      Tow / Impound, Loss of Shelter, and Transportation and Employment Consequences**

35.     In the same encounter, Doe Officers caused the vehicle to be towed and impounded.

36.     The vehicle was not obstructing the roadway.

37.     Doe Officers knew or should have known that towing the vehicle would deprive Plaintiff of his only shelter.

38.     Plaintiff was unable to retrieve the vehicle and lost both shelter and transportation as a result.

39.     The loss of the vehicle materially impaired Plaintiff's housing stability, employment access, ability to travel, and day-to-day functioning.

40.     Loss of transportation and the resulting weapons case impaired Plaintiff's ability to pursue driving work and to obtain employment in fields in which criminal background checks are routine, including banking, insurance, and finance.

**C.      Arrest, Booking, Charging Referral, and Prosecution**

41.     Doe Officers arrested Plaintiff, transported him, booked and processed him, and caused a mugshot to be taken.

42.     Criminal charges were initiated and maintained against Plaintiff in Multnomah County Circuit Court Case No. 21CR04258, including charges for unlawful possession of a firearm and possession of a loaded firearm in a public place.

43.     Plaintiff was seized through legal process during the prosecution, including mandatory court appearances and a restriction on leaving the state while the case remained pending.

44. The possession theory was thin. The firearm was not observed in plain view before the search, was allegedly found only after removal and search, was allegedly on or near the passenger-side floor area, and the passenger was not arrested.

45. Doe Officers prepared, submitted, and or caused the preparation and submission of reports, statements, evidence, and charging referrals that foreseeably resulted in the filing and maintenance of the charges.

46. Upon information and belief, the charging narrative omitted, minimized, or framed facts material to probable cause and to the lawfulness of the search, including the absence of any plain-view observation, the manner in which the firearm was allegedly discovered, the passenger's proximity to the firearm, and the weakness of any exclusive-possession inference.

**D.    Favorable Termination**

47. On November 30, 2023, the Multnomah County Circuit Court dismissed all charges in Case No. 21CR04258 in the interest of justice.

48. The prosecution ended without conviction.

49. Plaintiff made no admission in Case No. 21CR04258. Plaintiff does not plead this action as a collateral attack on any separate criminal case or revocation proceeding.

**E.    Post-Dismissal Firearm-Coded Caution Information and Downstream Harm**

50. After the dismissal, officer-facing dispatch and law-enforcement records continued to reflect firearm-coded caution language associated with Plaintiff and arising from, repeating, or materially shaped by the January 26, 2021 incident and related narrative.

51. Plaintiff later obtained or observed records reflecting that caution information in subsequent contacts, including a February 2024 Beaverton encounter, a

September 18, 2024 CAD entry that states 'firing weapon,' and a May 10, 2025 Washington County Sheriff's Office report reflecting firearm-related cautions and escalated tactics.

52. On or about February 2, 2024, a Beaverton Police Department officer observed Plaintiff seated alone in a lawfully parked vehicle registered to another person. Without any observed traffic violation or independent articulable suspicion of criminal activity, the officer positioned a patrol vehicle to block departure, queried law-enforcement database records, identified Plaintiff through an association between Plaintiff's identifiers and the registered owner that originated from the January 26, 2021 PPB stop, discovered an administrative arrest order, and arrested Plaintiff.

53. A report generated from that Beaverton encounter reflects firearm-coded caution information associated with Plaintiff's identifiers and affiliation data linking Plaintiff to the registered owner of the vehicle, who happened to be the passenger pulled out of the vehicle with Plaintiff on January 26, 202.

54. On September 18, 2024, officer-facing CAD output associated with Plaintiff's identifiers reflected a caution entry that states 'firing weapon.' The CAD output treated that entry as an officer-safety risk indicator during law-enforcement record responses.

55. On May 10, 2025, a Washington County Sheriff's Office report reflects that dispatch advised responding deputies that Plaintiff had an active warrant and firearm-related cautions associated with prior incidents.

56. That same report reflects that deputies drew and maintained their duty weapons in a low-ready posture, entered and moved through a residence with firearms drawn, and located Plaintiff inside.

57. Plaintiff's minor child was present during that armed search and arrest.

58. Plaintiff pleads May 10, 2025 allegations solely to show downstream harm, continuing injury, and the operational significance of the post-dismissal caution information. Plaintiff does not assert direct claims in this action against Beaverton, WCCCA, Washington County, or WCSO.

**F.     Notice, Safeguards, Deviation, and City Failure to Supervise**

59.     The January 26, 2021 encounter departed from the safeguards identified above. Doe Officers searched a vehicle that was being used as Plaintiff's home without valid consent, without a warrant, and without a valid warrant exception as pleaded here.

60.     Doe Officers then treated the vehicle-home context as irrelevant to the tow and impound decision even though the City had recognized hardship and vehicles-used-as-homes as policy concerns requiring discretion.

61.     Doe Officers also generated, adopted, or transmitted a possession narrative that converted weak attribution facts into criminal process.

62.     Upon information and belief, supervisory review, discipline, and enforcement were not structured or applied in a manner designed to detect and correct stop extension, unlawful vehicle-home searches, hardship-disregarding impound decisions, or materially slanted charging narratives of the kind alleged here.

63.     Plaintiff also possesses records of additional PPB encounters involving Plaintiff that show recurring stop extension, weak or shifting pretext, vehicle seizure, and escalation after database inquiry. Taken together, those records support the inference of a repeat operational pattern in which PPB officers converted minor or disputed bases for contact into broader detention, search, tow, or force decisions in circumstances involving Black occupants and heightened vulnerability.

64.     In January 2023, a PPB stop involving Plaintiff as the driver and the vehicle owner as an occupant, a City Hearings Officer later entered an order finding that a PPB-ordered tow was 'valid but unjustified.' The order found that the owner was using the vehicle as her home, had advised PPB officers of that fact, was present and in possession of the vehicle, and was not liable for tow and storage charges.

65.     That same order found that there was no evidence the vehicle was unlawfully parked, that PPB officers had initially offered the option of allowing a person with

a valid driver's license to drive the vehicle away, and that PPB did not follow all relevant laws and rules related to the tow. The order further noted that the PPB report identified the occupants as Black and rejected the asserted suspicious-vehicle rationale where the vehicle displayed a lawfully affixed valid trip permit, materially strengthening the inference of racially inflected pretext and stop expansion.

66. These additional incidents, the February 16, 2023 City tow-hearing order, and the City's own directives gave the City concrete notice of recurring risks in pretextual stop expansion, racially inflected enforcement, vehicle-home seizure, and incomplete or punitive tow and reporting practices, yet the City failed to implement or enforce measures designed to prevent recurrence.

67. After the dismissal of Case No. 21CR04258, the City did not provide Plaintiff with constitutionally adequate notice of the basis for firearm-coded caution information maintained about him, nor a meaningful process to challenge, correct, remove, or annotate materially misleading caution information. Upon information and belief, the City had or should have had audit trails, compliance mechanisms, and correction procedures capable of identifying who created, edited, retained, disseminated, or operationally relied on firearm-coded caution language tied to the dismissed incident and of correcting that information after favorable termination.

## VI. CLAIMS FOR RELEIF

### COUNT 1
### 42 U.S.C. § 1983
### Fourth Amendment
### Unreasonable Seizure Pursuant to Legal Process / Malicious Prosecution
### (Against Doe Officers)

68. Plaintiff realleges and incorporates by reference paragraphs 1 through 67 as though fully set forth here.

69. Doe Officers caused criminal proceedings to be initiated and continued against Plaintiff by arresting him, booking him, and preparing, submitting, and or causing the

preparation and submission of reports, statements, evidence, and charging referrals that foreseeably resulted in the filing and maintenance of charges in Case No. 21CR04258.

70. The prosecution was not supported by probable cause. The asserted basis for the charges arose from a warrantless search without valid consent or other valid exception as pleaded above and from a weak possession-attribution narrative under circumstances that did not support exclusive possession by Plaintiff.

71. Upon information and belief, Doe Officers omitted, minimized, or mischaracterized material facts bearing on probable cause and on the lawfulness of the search, including how the firearm was allegedly discovered and the weakness of the attribution theory.

72. The criminal proceedings terminated in Plaintiff's favor when the court dismissed all charges in the interest of justice and the prosecution ended without conviction.

73. As a direct and proximate result of the prosecution, Plaintiff was seized pursuant to legal process, including arrest, booking, mandatory court appearances, and travel restriction.

74. Plaintiff suffered damages including loss of liberty, loss of shelter and transportation, emotional distress, economic harm, and other damages to be proven at trial.

75. Doe Officers acted with reckless or callous indifference to Plaintiff's federally protected rights, warranting punitive damages.

**COUNT 2**
**42 U.S.C. § 1983**
**Monell Liability**
**Municipal Liability for Count 1 Theory**
**(Against City of Portland)**

76. Plaintiff realleges and incorporates by reference paragraphs 1 through 67 as though fully set forth here.

77. The underlying constitutional violation for this Count is the Fourth Amendment unreasonable seizure pursuant to legal process alleged in Count 1.

78. The City maintained, tolerated, or failed to correct practices under which PPB officers escalated minor or pretextual stops of Black motorists and other racial minorities, including by expanding the scope of stops after initial contact, removing occupants, searching vehicles without adequate constitutional basis, consent procedures, documentation, or supervision, and converting weak facts into arrest, tow, and charging narratives. In Plaintiff's encounters, those same practices also intersected with houselessness and the use of a vehicle as a home, producing loss of shelter and heightened hardship when officers seized or impounded the vehicle.

79. These practices concerned policy areas expressly governed by the City's own stated safeguards, including Directive 0344.05 on bias-based policing, Directive 0650.00 on searches, seizures, inventories, and documentation, Directive 0630.60 on tow and impound discretion and hardship, and related inventory, towing, reporting, and officer-safety recordkeeping requirements.

80. The City was on notice of the relevant risks because its own directives recognized them; because Plaintiff experienced multiple similar encounters involving stop expansion, vehicle seizure, or both; and because the February 16, 2023 City Hearings Officer order found a PPB tow 'valid but unjustified,' found that PPB had not followed all relevant laws and rules, and rejected an asserted suspicious-vehicle rationale in an encounter the PPB report described as involving Black occupants.

81. Despite that notice, the City failed to train, supervise, discipline, review, and enforce in a manner designed to prevent racially inflected pretextual stop expansion, unconstitutional search escalation, punitive or unjustified vehicle-home impounds, and slanted reporting that converted weak facts into criminal process.

82. The City's policy failures, customs, and deliberate-indifference omissions were the moving force behind Plaintiff's prosecution, seizure through legal process, loss of his vehicle-home, transportation and employment harms, and related damages.

## COUNT 3
## 42 U.S.C. § 1983
## Fourteenth Amendment
## Procedural Due Process
## Post-Dismissal Firearm-Coded Caution Retention / Dissemination
## (Against City of Portland)

83. Plaintiff realleges and incorporates by reference paragraphs 1 through 67 as though fully set forth here.

84. After the favorable termination of Case No. 21CR04258, the City, through PPB, BOEC, and related officer-facing records, dispatch, reporting, and review practices, maintained, adopted, retained, disseminated, republished, displayed, and/or operationally relied on firearm-coded caution language associated with Plaintiff and arising from, repeating, or materially shaped by the January 26, 2021 incident and related narrative.

85. To the extent that caution language represented Plaintiff as an active firearm threat based on the dismissed January 26, 2021 incident, or as someone who had fired a weapon or posed an equivalent ongoing danger by reason of that dismissed matter, the caution language was materially false or misleading after the prosecution ended without conviction.

86. The City did not provide Plaintiff with constitutionally adequate notice of the basis for that caution language or a meaningful process to challenge, correct, remove, or annotate it after favorable termination.

87. The caution language was not merely reputational. It was operationally used in later law-enforcement encounters and foreseeably affected how officers detained, approached, searched for, and arrested Plaintiff, including the February 2024 blocked-vehicle detention and arrest, the September 18, 2024 officer-safety CAD entry, and the May 10, 2025 armed search and arrest described above.

88. As a direct and proximate result, Plaintiff suffered continuing liberty, safety, family, emotional, and economic harms, including escalated officer tactics, fear and anxiety, and impairment to employment and housing access.

89.     Plaintiff realleges and incorporates by reference paragraphs 1 through 67 as though fully set forth here.

90.     The underlying constitutional violation for this Count is the Fourteenth Amendment procedural due process violation alleged in Count 3.

91.     The City maintained, tolerated, or failed to correct systems and practices under which firearm-coded caution information could be created, retained, republished, displayed, or operationally relied on after favorable termination without adequate auditing, notice, review, correction, annotation, or name-clearing procedures.

92.     Those practices were demonstrated in City policy areas and City-actor workflows, including PPB and BOEC recordkeeping, officer-safety labeling, dispatch handling, review and correction practices, and related law-enforcement information management used by City personnel.

93.     The City was on notice that deficient correction, review, and auditing procedures would create continuing liberty and safety risks because its own directives recognized the importance of accurate reporting and officer-safety recordkeeping, because City personnel used and acted through PPB and BOEC officer-facing workflows in later encounters, and because later records showed the continued operational presence of the caution language after the dismissal.

94.     Despite that notice, the City failed to implement and enforce constitutionally adequate procedures designed to prevent materially misleading caution information tied to a dismissed case from persisting and being used in later encounters.

95.     The City's policy failures, customs, and deliberate-indifference omissions were the moving force behind Plaintiff's continuing downstream harms, including

high-risk encounters, family trauma, emotional distress, and the ongoing need for declaratory and injunctive relief.

## VII.
## PRAYER FOR RELIEF

96. WHEREFORE, Plaintiff requests judgment as follows:

A.    Compensatory damages in an amount to be proven at trial;

B.    Punitive damages against the individual Doe Officers only;

C.    A declaration that the acts and omissions described above violated Plaintiff's rights under the Fourth and Fourteenth Amendments;

D.    Narrowly tailored injunctive relief requiring the City to review, correct, remove, or annotate materially false or misleading firearm-coded caution entries tied to the dismissed January 26, 2021 prosecution and to provide constitutionally adequate procedures for notice, review, correction, and name-clearing going forward;

E.    Appropriate preservation relief requiring the City to preserve relevant caution entries, audit trails, CAD records, BOEC records, PPB records, and related correction logs during the pendency of this action;

F.    Reasonable attorney fees, costs, and expenses as allowed by law, including under 42 U.S.C. § 1988 if applicable;

G.    Prejudgment and post-judgment interest as allowed by law; and

H.    Such other and further relief as the Court deems just and proper.

PLAINTIFF DEMANDS A JURY TRIAL

DATED: _____

Respectfully submitted,

/s/ Barry Washington
Barry Washington, Plaintiff, pro se